UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ALEX IZQUIERDO BUENO,

    Petitioner,

v.

R. THOMPSON,

    Respondent.

Civil Action
No. 24-912 (CPO)

OPINION

**O'HEARN, District Judge.**

Petitioner is a federal prisoner currently incarcerated at Federal Correctional Institution ("FCI") Fort Dix, in Fort Dix, New Jersey. He is proceeding *pro se* with a Second Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (hereinafter "Petition"). (ECF No. 8.) For the reasons stated in this Opinion, the Court will deny the Petition as moot.

## I.    BACKGROUND

This case arises from the Bureau of Prison's ("BOP") calculation of Petitioner's earned time credits under the First Step Act ("FSA"), 28 C.F.R. § 523.40 *et. seq. See generally* 18 U.S.C. § 3632. Petitioner alleges that the BOP failed to apply approximately 20 days of FSA credits towards early transfer to supervised release. (ECF No. 8, at 8–9, 24.)

By way of background, on February 22, 2023, the United States District Court for the Southern District of New York sentenced Petitioner to 68 months in prison and a 5-year term of supervised release, for conspiracy to import, manufacture, and possess with intent to distribute cocaine into the United States. *United States v. Izquierdo-Bueno*, Crim. No. 19-835, ECF No. 36, at 1–4 (S.D.N.Y. Feb. 23, 2023).

Petitioner arrived at FCI Fort Dix on April 18, 2023, but prior to that, he was in the custody of the United States Marshals Service ("USMS"). (ECF No. 18-1 ¶ 10.) From the date of his arrest

on December 10, 2021, until April 12, 2023, the USMS housed Petitioner at the Essex County Correctional Facility, in Newark, New Jersey, which is not a BOP facility. (*Id.*) Then, from April 12, 2023, to April 18, 2023, he was housed at the Metropolitan Detention Center in Brooklyn, New York, which is a BOP facility. (*Id.*)

Petitioner filed his original petition in February of 2024, and filed the instant Petition on June 25, 2024, challenging the BOP's calculation of his FSA credits. (ECF Nos. 1, 8). Petitioner argues that he should have started earning FSA credits on February 22, 2023, the date of his sentencing, not April 18, 2023,[1] the date he arrived at FCI Fort Dix. (ECF No. 8, at 7–9, 15.) As to his administrative remedies, Petitioner alleges that he raised his FSA credit claim[2] through all levels of administrative appeal. (ECF No. 8, at 3–4, 11–12.) In terms of relief, Petitioner asks the Court to order the BOP to "apply the FSA" and manually recalculate his credits "to ensure accurate application of [those] credits." (ECF No. 8, at 9, 15.) Respondent filed an Answer opposing relief, (ECF No. 18), and Petitioner filed a Reply, (ECF No. 21).

On November 12, 2024, the Department of Homeland Security ("DHS") issued a notice and order of expedited removal against Petitioner. (ECF No. 27-2, at 1.) According to Respondent, DHS determined that:

> pursuant to section 235(b)(1) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1225(b)(1), that Petitioner is inadmissible to the United States under section 212(a)(7)(A)(i)(I) of the INA, 8 U.S.C. § 1182(a)(7)(A)(i)(I), and therefore subject to removal because: (1) Petitioner is not a citizen or national of the United

---

[1] Petitioner erroneously states that he arrived at FCI Fort Dix in April of 2024. (ECF No. 8, at 8–9.) Based on the dates stated in his administrative remedies and a declaration from the BOP, however, he actually arrived at Fort Dix in April of 2023. (ECF No. 8, at 17, 19–23; ECF No. 18-1 ¶ 10.)

[2] The Petition purportedly raises two grounds for relief. However, because Ground One contends that Petitioner is entitled to additional FSA credits, and Ground Two asserts that the BOP miscalculated those credits, there is only a single claim. (ECF No. 8, at 7–8.)

> States; (2) Petitioner is a citizen and native of Ecuador; (3) Petitioner was paroled into the United States on December 10, 2021, at or near Newark, New Jersey, for the purpose of prosecution; and (4) Petitioner is an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the INA . . . . Based on this determination and evidence presented . . . DHS found Petitioner inadmissible as charged and ordered him removed from the United States pursuant to the authority contained in section 235(b)(1) of the INA, 8 U.S.C. § 1225(b)(1).

(ECF No. 27 (citing ECF No. 27-1 ¶ 4); *see also* ECF No. 27-2, at 1–2.)

Due to that development, Respondent filed a Supplemental Answer on December 17, 2024, arguing that Petitioner was no longer eligible to apply FSA credits, (ECF No. 27), and Petitioner filed a Supplemental Reply and related documents, (ECF Nos. 30, 31, 34, 35). At the Court's request, (ECF No. 36), the parties filed supplemental briefing regarding the finality of Petitioner's order of removal, (ECF Nos. 37, 38).

## II.    STANDARD OF REVIEW

Courts hold *pro se* pleadings to less stringent standards than more formal pleadings drafted by lawyers. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Courts must construe *pro se* habeas petitions and any supporting submissions liberally and with a measure of tolerance. *See Royce v. Hahn*, 151 F.3d 116, 118 (3d Cir. 1998). If a court does not dismiss the petition at the screening stage, the court "must review the answer, any transcripts and records . . . to determine whether" the matter warrants an evidentiary hearing. Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts (made applicable to proceedings under § 2241 by Rule 1(b)). "Whether to order a hearing is within the sound discretion of the trial court," and depends on whether the hearing "would have the potential to advance the petitioner's claim." *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000); *States v. Friedland*, 879 F. Supp. 420, 434 (D.N.J.

1995) (applying the § 2255 hearing standard to a § 2241 petition), *aff'd*, 83 F.3d 1531 (3d Cir. 1996).

### III.   DISCUSSION

Originally, Respondent argued that the Court should deny the Petition because: (1) Petitioner did not "successfully participate [in the] recidivism-reduction programming" required to earn FSA credit before arriving at FCI Fort Dix, and (2) "the FSA does not automatically allow inmates to earn time credits upon the commencement of their sentence." (ECF No. 27, at 1–2; ECF No. 18, at 14–23.)  Now, Respondent argues that the FSA statutorily prohibits Petitioner from applying FSA credits because he is subject to a final order of removal. (ECF No. 27, at 1–4; ECF No. 37, at 2–7.)

Under the FSA, prisoners who meet certain criteria and complete "evidence-based recidivism reduction programming or productive activities," can earn up to 365 days of credits to apply towards early transfer to supervised release. *See, e.g.*, 18 U.S.C. §§ 3632(d)(4), 3624(g)(3); *De Lima v. Warden, FCI Ft. Dix NJ*, No. 24-6925, 2024 WL 3580665, at *1 (D.N.J. July 26, 2024). The statute, however, expressly states that a prisoner "is ineligible to apply time credits" towards early transfer to supervised release, "if the prisoner is the subject of a final order of removal under any provision of the immigration laws." 18 U.S.C. § 3632(d)(4)(E)(i); *see, e.g.*, *Valadez De La Cruz v. Thompson*, No. 24-5635, 2024 WL 4635263, at *1 (D.N.J. Oct. 30, 2024); *Pineda v. Cruz*, No. 23-4939, 2024 WL 1526120, at *2 (D.N.J. Apr. 9, 2024). "The statute thus bars any inmate who is subject to a final order of removal from receiving FSA credits or applying any previously earned credits towards early supervised release." *Sanchez-Leyva v. Warden, FCI Ft. Dix*, No. 24-06118, 2024 WL 4249544, at *2 (D.N.J. Sept. 20, 2024); *see also Heleno-Jaramillo v. Warden*

4

*FCI Fort Dix*, No. 24-10242, 2025 WL 383586, at *2 (D.N.J. Feb. 4, 2025*)*; *Posso v. Warden FCI Fort Dix*, No. 24-4555, 2024 WL 4615671, at *3 (D.N.J. Oct. 29, 2024).

Although the FSA does not expressly define a final order of removal, the Supreme Court has defined that term, in the deportation context, as a "final order 'concluding that the alien is deportable or ordering deportation.'" *Nasrallah v. Barr*, 590 U.S. 573, 579, 581 (2020) (quoting 8 U.S.C. § 1101(a)(47)(A)). Courts around the country have applied *Nasrallah* in the FSA credit context. *See Obregon-Calcedo v. Thompson*, No. 25-1048, 2025 WL 1805464, at *2 (D.N.J. June 30, 2025); *Lopez v. Warden Thompson FCI Fort Dix*, No. 24-5860, 2024 WL 4891733, at *4 (D.N.J. Nov. 26, 2024); *Sauzo v. Thompson*, No. 24-04545, 2024 WL 4553675, at *2 (D.N.J. Oct. 22, 2024); *Pineda*, 2024 WL 1526120, at *3; *see also Leonidas-Torres v. FCI-Oxford's Warden*, No. 24-570, 2025 WL 1651710, at *2 (W.D. Wis. June 11, 2025); *Batioja Cuero v. Warden, FCI Berlin*, 748 F. Supp. 3d 58, 63 (D.N.H. 2024).

Under "8 U.S.C. § 1225(b)(1), DHS can issue expedited orders of removal to inadmissible aliens." *Pineda*, 2024 WL 1526120, at *3; *see also* 8 C.F.R. § 235.3 (detailing procedures for inadmissible aliens and expedited removal). After an immigration officer enters an expedited removal order, it becomes "final" after it is "reviewed and approved by . . . [a] supervisor." 8 C.F.R. § 235.3(b)(7) (stating that after approval by a supervisor, "the order is considered final"); *Batioja*, 748 F. Supp. 3d at 63 ("DHS's . . . regulations state that an expedited order of removal issued by an immigration officer that has been reviewed and approved by an appropriate supervisor[] . . . is considered 'final.'"); *Quinones v. Emmerich*, No. 25-25, 2025 WL 1638436, at *2 (W.D. Wis. June 9, 2025) (finding that orders "approved by a supervisor, are considered final"); *Pineda*, 2024 WL 1526120, at *3; *Gomez-Cuzme v. Birkholz*, No. 23-1753, 2023 WL 4423602, at

5

\*3 (C.D. Cal. June 1, 2023), *R. & R. adopted*, 2023 WL 4422830 (July 7, 2023) ("[A] supervisor reviewed and approved the determination, which made the order final.").

Critically, an alien subject to an expedited order of removal is not entitled to a hearing or to any appeals to challenge that order. *See* 8 U.S.C. § 1225(b)(1)(C) (stating that except for a request for review of a credible fear of persecution, an expedited "removal order . . . is not subject to administrative appeal"); 8 C.F.R. § 235.3(b)(2)(ii) ("No entitlement to hearings and appeals. Except as otherwise provided in this section, . . . [an alien subject to an expedited order of removal] is not entitled to a hearing before an immigration judge . . . or to an appeal of the expedited removal order to the Board of Immigration Appeals.").

As a result, this Court, like other courts, concludes that expedited orders of removal are "final orders of removal" for the purposes of the FSA. *See, e.g.*, *Leonidas-Torres*, 2025 WL 1651710, at \*1; *Quinones*, 2025 WL 1638436, at \*1–2; *Said v. Underwood*, No. 23-164, 2025 WL 90145, at \*2 (W.D. Pa. Jan. 14, 2025); *Batioja*, 748 F. Supp. 3d at 62–63; *Harriot v. Jamison*, No. 24-208, 2024 WL 2981150, at \*4 (S.D.N.Y. June 13, 2024), *R. & R. adopted*, 2025 WL 384556 (Feb. 4, 2025); *Alexander v. Healy*, No. 23-2384, 2024 WL 2020281, at \*3–4 (N.D. Ohio May 7, 2024); *Pineda*, 2024 WL 1526120, at \*3; *Ceron v. Engleman*, No. 23-3388, 2024 WL 967858, at \*2, (C.D. Cal. Jan. 24, 2024), *R. & R. adopted*, 2024 WL 968850 (Mar. 6, 2024).

Here, a DHS officer served Petitioner with an expedited order of removal, on December 4, 2024. (ECF No. 27-2, at 1). The order states that: "Based on the determination set forth above and evidence presented during inspection or examination pursuant to section 235 of the Act, and by the authority contained in section 235(b)(1) of the Act, you are found to be inadmissible as charged and ordered removed from the United States." (*Id.*) An immigration officer and supervisor have signed the order, and thus, it is no longer subject to review, and "final" under DHS regulations. 8

6

C.F.R. §§ 235.3(b)(2)(ii), 235.3(b)(7); *Quinones*, 2025 WL 1638436, at *2; *Said*, 2025 WL 90145, at *2; *Batioja*, 748 F. Supp. 3d at 63; *Pineda*, 2024 WL 1526120, at *3.

As Petitioner is subject to a final order of removal, "under the plain meaning of . . . 18 U.S.C. § 3632(d)(4)(E)(i), [he] is not entitled to [the] application of FSA . . . credits." *Pineda*, 2024 WL 1526120, at *2 (D.N.J. Apr. 9, 2024); *see also Quinones*, 2025 WL 1638436, at *1–2; *Said*, 2025 WL 90145, at *2; *Valadez*, 2024 WL 4635263, at *2; *Batioja*, 748 F. Supp. 3d at 63–64; *Harriot*, 2024 WL 2981150, at *4.

Petitioner argues that his expedited removal order is not final because he has had a pending Convention Against Torture ("CAT") claim since August 2, 2024, and federal law prohibits executing a removal order while a CAT claim remains unresolved. (ECF No. 38, at 2–4, 6, 8.)

Petitioner's pending CAT claim, however, does not alter the finality of his removal order. As discussed above, under DHS regulations, his order became final after a supervising official reviewed and approved the order, (*see* ECF No. 27-2, at 1), irrespective of any collateral relief applications. *See* 8 C.F.R. §§ 235.3(b)(2)(ii), 235.3(b)(7). As the Supreme Court has held, "the finality of [an] order of removal does not depend in any way on the outcome of . . . withholding-only [CAT] proceedings." *Johnson v. Guzman Chavez*, 594 U.S. 523, 539 (2021). The Supreme Court explained that "the order of removal is separate from and antecedent to[,] a grant of withholding of removal." *Id*. at 540. As a result, granting "withholding relief under CAT does not disturb the final order of removal, affect the validity of the final order of removal, or otherwise merge into the final order of removal." *Id*. (quoting *Nasrallah*, 590 U.S. at 582) (cleaned up). Rather, an "order granting CAT relief means only that, notwithstanding the order of removal, the noncitizen may not be removed to the designated country of removal, at least until conditions change in that country[,]" but he may still "be removed at any time to another country where he .

7

. . . is not likely to be tortured." *Id*. (quoting 8 C.F.R. §§ 1208.17(b)(2), 1208.16(f)). Accordingly, "[b]ecause the validity of removal orders is not affected by the grant of withholding-only [CAT] relief," Petitioner's "initiation of [CAT] proceedings does not render non-final an otherwise 'administratively final' . . . order of removal." *Id*. at 540; *Leonidas-Torres*, 2025 WL 1651710, at *2; *Batioja*, 748 F. Supp. 3d at 64–65.

Next, Petitioner argues that his removal order is not final because DHS failed to conduct a "mandatory" credible fear interview under 8 U.S.C. §§ 1225(b)(1)(A)(i)–(ii), 1225(b)(1)(B)(ii). (*See* ECF No. 38, at 2–3.) He alleges that DHS should not have ordered his removal because he expressed "an intention to apply for asylum or fear of persecution" protection. *Id*. Under 8 U.S.C. §§ 1225(b)(1)(A)(i), if an immigration officer determines that an alien "is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed . . . without further hearing or review *unless* the alien indicates either an intention to apply for asylum . . . or a fear of persecution." (emphasis added). If the alien expresses such intentions, "the inspecting officer *shall not proceed* further with removal of the alien until the alien has been referred for an interview by an asylum officer in accordance with 8 C.F.R. § 208.30." 8 C.F.R. § 235.3(b)(4) (emphasis added) (cleaned up).

While it is true that Immigration and Customs Enforcement ("ICE") may be unable to execute Petitioner's removal order, *see* 8 U.S.C. § 1225(b)(1)(A)(i); 8 C.F.R. § 235.3(b)(4), "nothing in those laws and regulations automatically revokes the [expedited removal order], or makes it otherwise nonfinal," even though Petitioner might ultimately succeed in obtaining collateral relief. *Batioja*, 748 F. Supp. 3d at 65; *see Guzman Chavez*, 594 U.S. at 540 ("[A]n alien's initiation of withholding-only proceedings does not render non-final an otherwise 'administratively final' . . . order of removal."); *Nasrallah*, 590 U.S. at 582; *Leonidas-Torres*, 2025

WL 1651710, at *2 ("The prospect that petitioner might obtain discretionary relief in a proceeding before an immigration judge does not render his order of removal nonfinal for purposes of calculating his time credits by the BOP."); *Jimenez v. Warden, FCI Fort Dix*, No. 24-773, 2024 WL 3568714, at *1 (D.N.J. July 26, 2024) ("That Petitioner was also granted . . . deferral of removal under the CAT does not change the fact that he has received a final order of removal."); *Doan v. FCI Berlin Warden*, No. 23-183, 2024 WL 1095894, at *4 (D.N.H. Feb. 21, 2024), *R. & R. adopted*, 2024 WL 1093756 (Mar. 13, 2024) ("Neither Petitioner's prior release from ICE custody, nor any determinations regarding his likelihood of removal, nor any temporary grant of discretionary relief, have rendered the underlying Removal Order nonfinal.").

Ultimately, Petitioner's argument regarding the absence of a credible fear interview challenges not the finality of his expedited removal order, but rather, its validity. Despite his allegation that he is "not challeng[ing] the removal order's validity," (*see* ECF No. 38, at 2), his claim that DHS failed to conduct a mandatory interview necessarily implicates procedural defects in the underlying removal order. *See* 8 U.S.C. §§ 1225(b)(1)(A)(i)–(ii); 8 C.F.R. § 235.3(b)(4). Indeed, in his briefing, he argues that "[f]ailure to conduct a [credible fear interview] invalidates [his] expedited removal order." (ECF No. 38, at 3; *see also* ECF No. 30 (alleging that failure to conduct the interview "constitutes a clear violation of statutory and regulatory safeguards" and that "[f]ailure to refer for a credible fear interview is a procedural violation *invalidating* [his] expedited removal [order]") (emphasis added)). However, the "REAL ID Act stripped district courts of jurisdiction over § 2241 petitions challenging removal orders." *Revan v. Warden, Essex Cnty. Corr. Facility*, 822 F. App'x 156, 157 (3d Cir. 2020) (citing 8 U.S.C. § 1252(a)(5)); *E.O.H.C. v. Sec'y United States Dep't of Homeland Sec.*, 950 F.3d 177, 184 (3d Cir. 2020); *see also Nasrallah*, 590 U.S. at 580. Instead, aliens must bring claims challenging the validity of removal

9

orders "in a petition for review filed with [the] appropriate court of appeals." *E.O.H.C.*, 950 F.3d at 184; *see also Revan*, 822 F. App'x at 157 ("[A] petition for review is the sole and exclusive means for judicial review of an order of removal" (cleaned up)).

As this finality argument rests on the validity of Petitioner's order of removal, *i.e.*, the order is not final because the failure to provide a credible fear interview rendered it invalid, this Court lacks jurisdiction to review his argument. *See, e.g.*, *Nasrallah*, 590 U.S. at 580; *Pandales v. Underwood*, No. 24-38, 2024 WL 4150344, at *2 (W.D. Pa. Aug. 29, 2024) ("[B]ecause Petitioner's due process claim is contingent on a determination of the validity of the final order of removal, this Court lacks jurisdiction to review it."); *Sauzo*, 2024 WL 4553675, at *1–2 (finding that the Court lacked jurisdiction over FSA credit claim that argued that a removal order was "invalid because it was signed by a 'field officer' instead of an Article III or immigration judge and because it was issued before he was sentenced"). Stated differently, the Court cannot deem Petitioner's removal order not final without first determining that it is invalid, but the Court lacks jurisdiction to make that determination. *See, e.g.*, *Revan*, 822 F. App'x at 157.

Consequently, Petitioner's expedited order of removal remains final, and he is statutorily prohibited from applying FSA credits. 18 U.S.C. § 3632(d)(4)(E)(i); *e.g.*, *Valadez*, 2024 WL 4635263, at *1–2; *see also De La Rosa-Tirado v. Thompson*, No. 24-11191, 2025 WL 654168, at *2–3 (D.N.J. Feb. 28, 2025); *Heleno-Jaramillo*, 2025 WL 383586, at *2; *Posso*, 2024 WL 4615671, at *3. As a result, evening assuming Petitioner had met all other requirements for eligibility, the BOP properly concluded that Petitioner is ineligible to apply any FSA credits that he may have otherwise earned. *E.g.*, *Valadez*, 2024 WL 4635263, at *1–2 ("The FSA credits Petitioner earned were always contingent on his not receiving a final order of removal, and were rendered inapplicable automatically by the statute once he received his . . . order of removal.").

10

As the FSA plainly prohibits Petitioner from applying any FSA credits, his claim that the BOP miscalculated his credits is now moot. And federal courts may not decide moot issues. *See* U.S. Const. art. III, § 2, cl. 1.; *Doe v. Delie*, 257 F.3d 309, 313 (3d Cir. 2001) (citing *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)). To avoid mootness, a controversy must exist at all stages of review, not only at the initiation of a case. *See Delie*, 257 F.3d at 313. If circumstances "prevent a court from being able to grant" the request for relief, a court must dismiss the case as moot. *County of Morris v. Nationalist Movement*, 273 F.3d 527, 533 (3d Cir. 2001) (quoting *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698–99 (3d Cir. 1996)). Stated differently, a "favorable judicial decision" must be capable of redressing an injury traceable to the defendant. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (internal quotation marks omitted).

As the FSA prohibits Petitioner from applying *any* FSA credits, it is now irrelevant whether he began earning credits on the date of his sentencing or the date he arrived at FCI Fort Dix. According to Petitioner, he is entitled to 20 additional days of FSA credits, but the BOP cannot apply those credits due to his final order of removal. 18 U.S.C. § 3632(d)(4)(E)(i); *see, e.g.*, *Valadez*, 2024 WL 4635263, at *1–2; *Pineda*, 2024 WL 1526120, at *2–3.

In other words, even if the Court declared that Petitioner should have started earning credits on the date of his sentencing, and ordered the BOP to recalculate his credits, those rulings would have no effect on the length of his sentence. As a result, the Court cannot grant effective relief and there is no live controversy in this case. Nor do any of the exceptions to mootness apply. *See generally Chong v. Dist. Dir., I.N.S.*, 264 F.3d 378, 384 (3d Cir. 2001) (discussing the exceptions). Accordingly, the Petition is moot.

## IV.    CONCLUSION

For the foregoing reasons, the Court will deny the Petition as moot. This denial is without prejudice.[3] An appropriate Order follows.

DATED: July 10, 2025

/s/ Christine P. O'Hearn
**Christine P. O'Hearn**
**United States District Judge**

---

[3] If Petitioner is able to successfully invalidate his final order of removal in other proceedings, he may move to reopen this case.